UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════════

TODD WHITE,

          Plaintiff,

v.                              5:11cv00187  NPM

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
----------------------------------------------------------------------------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Olinsky Law Group | Howard D. Olinsky, Esq. |
| Attorney for Plaintiff | |
| 300 S. State St. | |
| Fifth floor, Suite 520 | |
| Syracuse, NY 13202 | |
| | |
| Social Security Administration | Katrina M. Lederer, Esq. |
| Attorney for Defendant | |
| Office of Regional General Counsel | |
| Region II | |
| 26 Federal Plaza - Room 3904 | |
| New York, NY 10278 | |

NEAL P. McCURN, Senior District Court Judge

## **MEMORANDUM - DECISION AND ORDER**

This action was filed by the plaintiff Todd White ("plaintiff") pursuant to 42

U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner"), who denied his application for disability insurance benefits ("DIB") and supplement security income ("SSI").  Currently before the court is plaintiff's motion for judgment on the pleadings (Doc. No. 10) seeking reversal of the Commissioner's decision and an order of remand for a new hearing, and the Commissioner's motion for judgment on the pleadings (Doc. No. 11) seeking affirmation of the Commissioner's findings.  The court has undertaken a thorough review of the record and the parties' arguments, and for the reasons set forth below, the Commissioner's motion is granted.

## I.    Facts and Procedural History

The following procedural history and facts are taken from plaintiff's statement of the case.  The plaintiff filed applications for SSI and DIB on March 13, 2009, alleging disability beginning October 15, 2004.  Plaintiff alleges impairments of: (1) lumbar radiculopathy; (2) lumbago and discogenic lower back pain; (3) degenerative disc disease, disc bulging, and herniation in the lumbosacral and thoracic spines; (4) left knee and left ankle injuries, status post work related injury; (5) degenerative changes in the left foot; (6) chronic obstructive pulmonary disease (COPD); and (7) hyperlipidemia. T. 143-150, 229-230, 239, 253-254, 263,

270.[1]  His applications were initially denied on September 22, 2009. T. 54-69. On

October 5, 2009, plaintiff timely requested a hearing with an Administrative Law

Judge. T. 26-49.  Plaintiff appeared and testified at a hearing held on August 17,

2010 in Syracuse, New York in which Administrative Law Judge Augustus C.

Martin (the "ALJ") presided by video conference from the Office of Disability

Adjudication and Review in Baltimore, Maryland. Plaintiff was represented by

attorney Michael J. Ranieri, Esq.  Vocational expert ("VE") Jay Steinbrenner, also

appeared and testified. The ALJ issued an unfavorable decision dated October 1,

2010. T. 12-25.  On October 18, 2010, plaintiff requested review of the ALJ's

decision. T. 9-11.  On December 23, 2010, the Appeals Council denied Plaintiff's

request for review. T. 1-5.  This civil action followed.

Plaintiff was born on December 4, 1964 and was 39 years old on the alleged

disability onset date of October 15, 2004.  He has an employment history as a

cleaner, handyman, and laborer. T. 172.  Plaintiff has a general education diploma

(GED). T. 176.  His date last insured is June 30, 2008. T. 181.  On November 30,

2000, Steven Fish, M.D. treated plaintiff for left knee and ankle injuries following

a work-related injury in 1999. T. 229-30.  Dr. Fish noted that physical therapy has

not helped with the pain. Dr. Fish observed medial joint line tenderness in the left

---

[1]        Pages of the Administrative Transcript will be referred to as "T. __".

knee and pain with range of motion testing in the left ankle.  Plaintiff had pain

with anterior Drawer testing and discomfort with inversion and eversion testing.

Dr. Fish diagnosed left knee and ankle pain. T. 229.  Dr. Fish noted on January 16,

2001 that there was no progress since the last visit. T. 231.  On July 24, 2001,

plaintiff complained of persistent knee and foot problems. T. 232.  Neurological

surgeon John Krawchenko, M.D. treated Plaintiff on November 4, 2002 for

constant low back and leg pain, and radiculopathy caused from a 1999 work-

related injury. T. 253-54.  Plaintiff reported numbness and tingling in the leg and

foot and weakness with walking.  There was left ankle and foot numbness, and

numbness around the left knee.  Dr. Krawchenko noted conservative treatment

with no improvement. Plaintiff reported difficulty sitting more than 10 minutes

and difficulty walking a block.  Upon examination, Dr. Krawchenko observed

difficulty sitting and getting out of a chair.  There was weakness in the left anterior

tibialis, peroneus, posterior tibialis, and gastrocs, diffuse tenderness on percussion

of the lumbar spine and paraspinal muscles with moderate lumbar spasm, and

limited range of motion and positive straight leg raising bilaterally.  There was a

decrease in bilateral knee reflexes and right ankle reflex, decreased pin and touch

sensation in the left leg and foot and L 4-5 and S1 dermatomes.  Dr. Krawchenko

recommended continued conservative treatment instead of surgical intervention.

4

Prognosis was guarded for diagnoses of lumbar spine injury and lumbar radiculopathy.  Dr. Krawchenko assessed plaintiff as totally disabled. T.253.

On November 17, 2003, Dr. Fish treated plaintiff for worsening left leg, back, and left foot injuries. T. 239-40.  Dr. Fish noted persistent weakness in the left foot and ankle with dorsiflexion.  Plaintiff had tenderness along the medial aspect of his foot, along the posterior tibial tendon.  Plaintiff was prescribed a UCBL orthosis.  Radiographs revealed degenerative changes in the mid foot. T. 239.  Dr. Fish noted that a magnetic resonance imaging ("MRI") scan of the spine revealed disc herniation at L3-4 off to the left with degenerative changes and a central disc herniation at L5-S1. Plaintiff had persistent left leg radiculopathy and persistent weakness in the left foot. T. 246.

On December 22, 2003, Dr. Krawchenko treated plaintiff for lower back pain radiating down the left leg and foot. T. 251-252.  Dr. Krawchenko noted that sitting more than 5 minutes or walking half a block increases plaintiff's pain. Plaintiff had difficulty lifting more than 10 pounds and had difficulty sleeping. Pain medication and muscle relaxants provided no improvement.  Injuries resulted from work-related injuries in 1999 and 2001, which caused significant worsening of his symptoms.  Dr. Krawchenko assessed plaintiff as totally disabled.  Upon examination, Dr. Krawchenko observed moderate back and leg pain, difficulty

sitting and getting out of the chair, limp favoring the left leg, and difficulty walking on the left heel and toes.   Dr. Krawchenko observed diffuse tenderness on percussion of the lumbar spine and paraspinal muscles with moderate muscle spasm.  There was decreased range of motion in the lumbar spine and positive straight leg raise testing bilaterally. Dr. Krawchenko noted weakness in the left thigh, quadriceps, anterior tibialis, gastrocs, and hamstring.  Dr. Krawchenko observed areas of decreased pin and touch sensation in the left leg and foot and in the left L4-5 and S1 dermatomes.   Dr. Krawchenko noted plaintiff's condition to be worsening.  Dr. Krawchenko opined that plaintiff was limited to lifting no more than 5-10 pounds, should avoid prolonged sitting more than 10-15 minutes, and should not stay in one position. T. 251.  Prognosis was guarded for diagnosis of lumbar radiculopathy. T. 252.

Dr. Fish treated plaintiff on February 19, 2004 for back and left lower extremity injuries with increasing discomfort.  Dr. Fish observed limitation of ankle range of motion and weakness in left ankle dorsiflexion.   Plaintiff had irritability to range of motion in internal and external rotation in the left hip.  Dr. Fish observe positive straight leg raise tests and muscle atrophy in the left calf and thigh. T. 240.  On March 31, 2004 plaintiff was treated for left lower extremity problems. T. 240-241.  Dr. Fish noted plaintiff was using ankle and knee

braces.  Plaintiff reported his leg giving out on him.  Dr. Fish noted that an MRI of the knee showed chondromalacia.  Dr. Fish observed limited range of motion in the left knee, medial joint line tenderness, and left ankle range of motion limited for plantar flexion. T. 241.

On April 30, 2004, an MRI of the left knee revealed a suspected mid body level, medial meniscus tear. T. 248.  Dr. Fish treated plaintiff on May 13, 2004 for medial sided knee pain and lower back pain with radicular type symptoms.  Dr. Fish referred plaintiff to the Pain Clinic for an epidural injection.  Plaintiff reported occasionally needing help getting dressed.  Plaintiff treated on July 14, 2004 for left lower extremity pain. There was medial and lateral joint line tenderness and moderate medial sided tenderness in the region of his navicular.  T. 242. On August 18, 2004, Dr. Fish treated plaintiff for his unchanged back and left leg problems.  There was medial sided joint tenderness of the left knee, ankle, and foot.  Dr. Fish noted that the Swedo ankle brace made pain worse. T. 243.  Dr. Fish treated plaintiff on October 11, 2004 for back and leg symptoms and noted plaintiff to be "doing quite poorly at this point." T. 243-44.  Plaintiff had persistent low back pain radiating down his left leg, left knee pain, and persistent foot pain, in which he had occasional numbness in his toes.  There was weakness in the left lower extremity, medial-sided tenderness of the left knee, and

tenderness over the mid portion of the left foot.  Dr. Fish opined that plaintiff

"could potentially do some sort of work situation where he would have to

be sitting, change positions frequently.  There would be no lifting involved, etc."

On October 21, 2004, Dr. Fish noted that physical therapy was denied by

plaintiff's insurance.[2]  T. 243.  On January 13, 2005, Dr. Fish noted that plaintiff

had persistent low back pain, left lower extremity symptoms, and chronic pain in

the left foot.  Dr. Fish noted left-sided central disc herniation at L3-4 and

degenerative disc disease with a disc herniation at L5-S1. T. 249.

Plaintiff treated with Patrick J. Carguello, D.O. of Pulaski Medical Center

on January 10, 2008 for left leg and back pain at an intensity of 5/10.  Plaintiff

reported weight loss.  Dr. Carguello observed muscles aches, stiffness, and pain

localized in the low back and leg. T. 269.  Dr. Carguello diagnosed COPD,

hyperlipidemia, and bulging intervertebral disc and chronic discogenic pain. T.

270.  Medications included Atenolol, Hydrochlorothiazide, and Tramadol. T. 271.

On June 12, 2009, plaintiff was treated for chronic lower back pain and left

leg and foot pain. T. 265-68.  Plaintiff stated that his pain was at an intensity of

7/10. T. 266.  Medications of Hydrochlorothiazide and Tramadol were prescribed.

---

[2]     The record reveals that plaintiff was covered by Workers' Compensation for a
work-related injury on October 15, 1999. T. 151-53.

T. 267.  Elaine J. Shaben, N.P. of Pulaski Medical Center treated plaintiff on June 29, 2009 for chronic lumbago radiating into the legs bilaterally, ongoing since 1999. T. 263.  Plaintiff appeared to be in acute distress. T. 263.  Plaintiff reported that medication of Tramadol was ineffective. T. 263.  Plaintiff treated with Dr. Carguello on June 30, 2009 for lumbago. T. 261- 62.  Medications included Atendolol, Hydrochlorothiazide, Ibuprofen, and Tramadol. T.261.  An MRI of the lumbar spine on July 1, 2009 revealed: (1) small disc protrusions at L3-4 and L5-S1; (2) foraminal narrowing at L3-4 through L5-S1; and (3) mild disc bulging at L4-5. T. 275-76.  There was mild to moderate degenerative disc disease at L5-S1 and mild degenerative disc disease at L3-4.  At L3-4, there was a 2-3 mm broad based left paracentral disc protrusion superimposed on diffuse disc bulge abutting the descending left L4 nerve root.  At L4-5, there was mild diffuse disc bulging, mild degenerative facet changes, and mild foraminal narrowing due to disc bulging and facet arthropathy.  At L5-S1, there was a small broad based disc protrusion with slight lateralization to the right, mild posterior osteophytic spurring, and mild bilateral foraminal narrowing due to disc bulging and facet arthropathy, right greater than left. T. 275.

State agency consultant Justine Magurno, M.D., completed an internal medicine examination on August 13, 2009. T. 278-82.  Upon examination,

plaintiff reported back pain with walking, inability to perform heel and toe walk, and squat was limited to 25%.  Examination of the lungs revealed wheezing bilaterally, left side more than the right. T. 280.  Range of motion in the cervical spine was limited to 20 degrees for lateral flexion on the right and 30 degrees on the left. T. 280-81.  Dr. Magurno noted possible dextroscoliosis.  Range of motion in the lumbar spine was limited to 40 degrees for flexion, 0 degrees for flexion, and 5 degrees for left rotation.  There was tenderness in the lumbar spine, paraspinal muscles, and SI joint.  Supine and seated straight leg raise test were positive bilaterally.  Range of motion in the shoulders was limited to 30 degrees bilaterally for internal rotation.  Wrist range of motion was limited to 30 degrees for dorsiflexion.  Hip range of motion was limited to 70 degrees for flexion, 30 degrees for left abduction, and 10 degrees for left adduction.  Left knee was limited to 30 degrees for range of motion.  Range of motion was limited to 10 degrees for left dorsiflexion, and the left ankle was tender to palpation.  There was decreased strength on the distal left lower extremity.  Reflexes were limited in the patellar with motor deficits.  T. 281.  Dr. Magurno diagnosed: (1) discogenic lower back pain; (2) left foot pain, status post fracture; (3) left knee pain, status post injury; and (4) history of COPD. T. 281-82.  Dr. Magurno assessed prognosis for pain and COPD as poor.  Dr. Magurno opined that plaintiff should avoid dust,

fumes, and other known lung irritants due to his history of COPD.  Plaintiff had marked limitations for bending, lifting, carrying, and squatting.  Plaintiff had moderate limitations for walking, standing, and sitting. T. 282.

On August 28, 2009, Dr. Magurno completed pulmonary function testing. T. 291-97.  The forced expiratory volume in one second (FEV1) resulted in 2.65 liters before bronchodilators and 2.94 after bronchodilators.  The forced vital capacity (FVC) resulted in 4.54 liters before bronchodilators and 4.99 after bronchodilators.  Dr. Magurno assessed that results were consistent with moderate obstruction without significant improvement post bronchodilation. T. 291.

On March 1, 2010, plaintiff treated at Adams Community Health Center for back pain at an intensity of 7/10, and hypertension. T. 312-13.  Plaintiff was treated for back pain at an intensity of 9/10 on July 22, 2010. T. 318.  An MRI of the thoracic spine on August 20, 2010 revealed multiple thoracic disc protrusions. Specifically, at T2-3 there was a small right paracentral disc protrusion.  At T5-6, there was a small central disc protrusion.  At T7-8, there was a small left paracentral annular tear and protrusion.  At T8-9, there was a right paracentral annular tear and protrusion with minimal right anterior spinal cord flattening.  At T9-10, there was a small right paracentral protrusion. T. 322.  An MRI of the lumbar spine revealed degenerative changes. T. 324-25.  At L3-4, there was a

small annular tear with minimal disc protrusion in the left paracentral portion of the disc, mild disc bulge, and facet degeneration.  At L4-5, there was mild disc bulge and facet degeneration.  At L5-S1, there was a small central disc protrusion causing mild right greater than left superior S1 subarticular recess narrowing, and mild facet degeneration. T. 324.

The Commissioner incorporates plaintiff's facts and procedural history into his brief but supplements "plaintiff's incomplete statement of facts" (Doc. No. 11, p. 3) with the following facts taken from the record.   Plaintiff testified that he lived with his wife and 17 year old son. T. 31.  He stated that he stopped working in 2004. T. 33.  He testified that he could not work due to lower back pain and numbness in his legs, which he treated with medication. T. 34-35.  Plaintiff stated that the first time he knew of his diagnosis of COPD when he was examined by a Social Security doctor. T. 34. He said that he did not do any household chores or shopping, because his wife did those tasks. T. 37-38. According to plaintiff, he walked three or four blocks into town a few times per week. T. 38. He enjoyed watching television and movies. T. 39. Plaintiff stated that he could stand or walk for a half hour, and could lift up to 10 pounds. Id.

At the hearing, Vocational Expert ("VE") Jay Steinbrenner testified in response to a hypothetical question describing a claimant who could perform

sedentary work, with no climbing of ladders or scaffolds; occasional postural

movements; the need to alternate positions at will; and who must avoid

concentrated exposure to environmental pollutants. T. 45. The VE testified that

jobs existed in the national economy that such a claimant could perform, including

ticket seller, telephone survey worker, and switchboard operator. Id.

The most recent treatment note from plaintiff's treating physician, Dr. Fish,

is dated October 11, 2004, shortly before plaintiff's alleged onset of disability. At

that time, plaintiff showed some mild tenderness in his left knee and foot. T. 243.

Straight-leg raising was equivocal, and did not seem to reproduce radicular

symptoms. Id. The doctor opined that plaintiff could do work involving sitting,

and stated that plaintiff would have to change positions frequently. Id.  He stated

that plaintiff should not do any lifting. Id.  The only treatment notes from Dr. Fish

from the relevant period (post-October 15, 2004) indicate that plaintiff missed his

scheduled appointments throughout the end of 2004, 2007, and 2009. T. 244,

307-09.  The record also contains a letter sent from Dr. Fish to a state disability

analyst dated January 13, 2005, in which Dr. Fish notes that plaintiff had low back

pain and left lower extremity symptoms. T. 249.  He opined that plaintiff could

work at a job involving sitting and frequent changing of positions, with no

significant lifting. T. 249.

On January 10, 2008, Dr. Carguello notes that plaintiff complained of low back and leg pain at a level of 5 out of 10. T. 269.  On examination, his back and all other systems were normal.  Dr. Carguello noted that plaintiff had lost weight due to doing paving work[3] over the summer. T. 270. Plaintiff complained of low back pain on June 12, 2009.  His physical examination was otherwise normal. T. 266. The doctor prescribed a painkiller. T. 268.  On June 30, 2009, Dr. Carguello noted that plaintiff smoked cigarettes, and refused help to quit.  He also had poor exercise habits, but had normal activities of daily living. T. 261.  Plaintiff's musculoskeletal examination was normal, and he had a normal gait and stance. T. 262. An MRI of plaintiff's lumbar spine on July 1, 2009 showed small disc protrusions at the L3-4 and L5-S1 levels, with no central spinal canal stenosis, and foraminal narrowing at L3-4 through L5-S1, with mild disc bulging at the L4-5 level. T. 276.

Karen Caldemeyer, M.D. opined that an MRI of plaintiff's thoracic spine performed on August 20, 2010 showed multiple small thoracic disc protrusions, with normal vertebral body height and alignment. T. 322.  An MRI of the lumbar spine on the same date showed a small central disc protrusion at L5-S1, with mild right greater than left S1 subarticular recess narrowing. T. 324.  Dr. Caldemeyer

---

[3]     This issue will be discussed in detail below.

14

noted no significant spinal stenosis or neural foraminal narrowing. Id.

Dr. Justine Magurno conducted a consultative examination of plaintiff on August 13, 2009. T. 278-82.  Plaintiff reported that he was able to dress, watch television, listen to the radio, read, and go out to dinner. T. 279. On examination, plaintiff had a normal gait and stance, and could stand on his heels and toes. He used no assistive devices, and needed no help getting on or off the exam table. Plaintiff was able to rise from a chair without difficulty. T. 280. He had full flexion, extension, and rotation in his cervical spine, although he had reduced lumbar spinal flexion and reduced lumbosacral rotation to the left. T. 281.  He had tenderness in areas of his back, and a positive straight-leg raise. Id.  Plaintiff's left knee had a range of motion of 130 degrees, with no effusion, and no tenderness. Id. The doctor noted that plaintiff's prognosis for COPD was poor because of his continued smoking, and opined that plaintiff should avoid dust and fumes, and had marked limitations for bending, lifting, carrying, and squatting. T. 282. She further opined that plaintiff had moderate limitations for walking, standing, or sitting, but no limitations for reaching, pushing, pulling, or fine motor activities. Id. Pulmonary function testing on August 28, 2009 was consistent with moderate obstruction without significant improvement post-bronchodilation. T. 291.

**II.    Discussion**

15

The issue to be determined by the court is whether the Commissioner has applied the proper legal standards and whether the Commissioner's decision that plaintiff was not eligible for DIB and SSI is supported by substantial evidence. Plaintiff argues that the ALJ erred in failing to make a function by function assessment of the plaintiff's RFC; failed to follow the treating physician rule; did not apply the appropriate legal standards in assessing plaintiff's credibility; and the ALJ's Step 5 finding is not supported by substantial evidence.

## A.   Standard of Review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted). See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v.

Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler,

728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the

Commissioner, a district court, in its discretion, "shall have the power to enter,

upon the pleadings and transcript of record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing."  42 U.S.C. § 405(g).

### B.    Disability Defined

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether

> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity[4] to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his]

---

[4]     Residual functional capacity ("RFC") refers to what a claimant can still do in a work setting despite any physical and/or mental limitations caused by his or her impairments and any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

> burden of proving the requirements in the first four steps,
> the burden then shifts to the Secretary to prove in the
> fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d
41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational

factors (the claimant's age, education, and past work experience), and to determine

whether the claimant is capable of performing other jobs existing in significant

numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615

(S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months.

Substantial work activity is defined as "work activity that involves doing

significant physical or mental activities.  Your work may be substantial even if it

is done on a part-time basis or if you do less, get paid less, or have less

responsibility than when you worked before."  Gainful work activity is defined as

"work activity that you do for pay or profit.  Work activity is gainful if it is the

kind of work usually done for pay or profit, whether or not a profit is realized." 20

C.F.R. § 404.1572(a-b) (West 2009).

### C.    Analysis

In the case at bar, the ALJ applied the a five-step sequential evaluation process and determined that the plaintiff (1) meets the insured status requirement of the Social Security Act through June 30, 2008; (2) has not engaged in substantial gainful activity since October 15, 2004, the alleged onset date (20 CFR 404.1571 et seq. and 416.971 et seq.); (3) has the following severe impairments: degenerative disc disease, left foot pain, status post fracture, left knee pain, status post injury, and COPD (20 CFR 404.1520(c) and 416.920(c); and (4) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).  At Step 5, the ALJ held that "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can do no climbing of ladders, ropes or scaffolds, only occasionally perform postural movements, needs the ability to alternate position at will, and must avoid concentrated exposure to all environmental pollutants.

As stated supra, plaintiff argues that the ALJ erred in failing to make a

function by function assessment of the plaintiff's RFC; failed to follow the treating physician rule; did not apply the appropriate legal standards in assessing plaintiff's credibility; and also argues that the ALJ's Step 5 finding is not supported by substantial evidence.  Addressing these arguments in turn, the court considers plaintiff's argument that SSR 96-8p states "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Doc. No. 10, p. 16.  The court's review of SSR 96-8p does not find this language.  Instead, the quote appears in Johnson v. Astrue, 748 F.Supp.2d 160, 170-71 (N.D.N.Y. 2010).  In Johnson, this court stated that "SSR 96–8p requires, **unless the medical evidence is alone sufficient** (emphasis added), a function by function RFC assessment of the individual's capacity to perform each of the functions associated with work at a given exertional level. This enables an ALJ to determine the effect of each impairment a claimant suffers from in relation to the criteria of a given job classification." The Johnson court found that the medical evidence in the record did not support the ALJ's RFC determination. Id. at 171.  Here, the court finds that the ALJ discussed plaintiff's functional limitations at length prior to reaching his RFC determination. T. 18.   Social Security Ruling 96-8p(4) states in pertinent part

that "[t]he RFC assessment must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis ... Only after that may RFC be expressed in terms of the

exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR

96-8P(4) (West 2012).  In his decision, the ALJ identified plaintiff's functional

limitation and discussed the medical opinions of Drs. Fish and Magurno contained

in the record, including the treatment received by plaintiff, before giving great

weight to the functional assessments of these physicians. T. 19.  The court finds

that the ALJ utilized the medical evidence to affirm his function by function

assessment of the plaintiff, and substantial evidence supports his decision.  In fact,

the medical evidence alone is sufficient to support the ALJ's determination.

Next, plaintiff argues that the ALJ failed to follow the treating physician

rule because he completely excluded the opinions of treating orthopedist Dr.

Krawchenko.  The Commissioner argues, and the court concurs, that the ALJ did

not err in his lack of consideration of Dr. Krawchenko's December 22, 2003

assessment of plaintiff as this assessment was made almost a year prior to

plaintiff's alleged onset of disability, and was made while plaintiff was still

working.  Plaintiff argues that because the ALJ did not consider Dr. Krawchenko's

opinion of plaintiff's limitations or his treating records, the ALJ did not comply

with relevant legal standards, warranting remand on this issue.  The court is not

persuaded by plaintiff's argument, and finds that the ALJ did not err in this regard.

Plaintiff next argues that the ALJ did not apply the appropriate legal

standards in assessing plaintiff's credibility.  Plaintiff states that the ALJ's

recitation of facts contained in the credibility assessment must be accurate and

contain an explanation why they undermine the credibility of the witness.  One

credibility issue on which the ALJ did expound, and which the plaintiff

understandably does not mention,  is the plaintiff's credibility regarding his

alleged back, leg and foot problem.  The ALJ states that "despite the claimant's

testimony that he has not worked since his alleged onset date, treatment notes from

January 2008 attribute a significant weight loss to a summer season of paving ...

This notation, combined with claimant's repeated no-shows for appointments,

suggests that the claimant's condition is not as limiting as alleged." T. 19.  In the

court's examination of the medical transcript, it viewed the information to which

the ALJ refers, contained in physician notes from plaintiff's January 10, 2008 visit

to Dr. Carguello. T. 270.  The doctor writes that plaintiff had experienced weight

loss, and states "[t]ypical loss after summer season of paving. By end of winter

**each year** gets up to 180#." (emphasis added).  From this it can be concluded that

in the summer of 2007, and, most likely, in summers prior to 2007, plaintiff

engaged in paving work, despite his assertions that he had not engaged in

substantial gainful activity since October 15, 2004,  the date of his alleged

disability.  The court also notes that there was no entry of reported income from

2005 to 2010. T. 165.  The ALJ considered this information in his determination

that plaintiff was only partially credible, in addition to plaintiff's repeated no-

shows for doctor's appointments. T. 19. The court concurs in the ALJ's

determination on credibility regarding plaintiff's alleged back, leg and foot

problems, and finds that the ALJ did not err in finding plaintiff less than credible

on this issue.  Regarding the ALJ's determination that plaintiff was only partially

credible in reporting his COPD, the ALJ noted that plaintiff continues to smoke

cigarettes, and reported no shortness of breath, cough, or wheezing to his treating

provider. T. 19.  The court finds that the ALJ made no error in assessing the

credibility of the plaintiff on either issue.

Accordingly, plaintiff's last argument, that the ALJ's Step 5 finding is not

supported by substantial evidence, also fails.  Plaintiff argues that the ALJ's errors

in developing the record and evaluating plaintiff's RFC and his subjective

statements ultimately affected the Step 5 determination whether there are jobs that

exist in significant numbers in the national economy that the plaintiff can perform.

Consequently, plaintiff argues, the hypothetical question asked of the VE was

incomplete.  As stated supra, VE Steinbrenner testified in response to a

hypothetical question describing a claimant who could perform sedentary work,

with no climbing of ladders or scaffolds; occasional postural movements; the need

to alternate positions at will; and who must avoid concentrated exposure to

environmental pollutants. T. 45. The VE testified that jobs existed in the national

economy that such a claimant could perform, including ticket seller, telephone

survey worker, and switchboard operator. Id.  Based on the record before the

court, including the notation that plaintiff informed his doctor that he was doing

paving work, the court finds that plaintiff's argument fails, and substantial

evidence supports the ALJ's finding that the plaintiff was not disabled.

## III.   Conclusion

Accordingly, for the reasons set forth above, plaintiff's motion for judgment

on the pleadings (Doc. No. 10) is hereby DENIED, and the Commissioner's

motion for judgment on the pleadings (Doc. No. 11) is hereby GRANTED.  The

Clerk is instructed to close this case.

SO ORDERED.

April 19, 2012

_____
Neal P. McCurn
Senior  U.S. District Judge